IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

Harvey Jackson, Individually, and as Parent and Next Friend of I.J., a Minor

    Plaintiff,

v.

HCA-HealthOne, L.L.C. d/b/a Presbyterian/St. Luke's Medical Center and Ronald Gene Wagner, Jr., M.D.,

    Defendants.

---

## COMPLAINT FOR DAMAGES AND JURY DEMAND

---

Plaintiff, Harvey Jackson, as Parent and Next Friend of I.J., a Minor, by and through his attorneys of record, Leventhal, Brown & Puga, P.C., for his Complaint for Damages and Jury Demand, states and alleges as follows:

### I.    CERTIFICATE OF REVIEW

Pursuant to C.R.S. § 13-20-602(3)(a), counsel certifies as follows:

Counsel has consulted with an expert with expertise in the areas of the alleged negligent conduct as set forth in Plaintiff's Complaint for Damages and Jury Demand; and,

The expert who has been consulted has reviewed all currently known facts relevant to the allegations of negligent conduct as complained of in Plaintiff's Complaint for Damages and Jury Demand; and,

Based upon such facts, the expert has concluded that the filing of the claims against Defendants does not lack substantial justification within the meaning of C.R.S. § 13-17-102(4); and,

The physician who has reviewed all known facts relevant to the allegations of negligent conduct as contained in Plaintiff's Complaint for Damages and Jury Demand meets the requirements set forth in C.R.S. § 13-64-401.

## II. JURISDICTION

1. Plaintiff Harvey Jackson resides in the State of Wyoming.

2. Plaintiff Harvey Jackson is the father and next friend of I.J., a Minor.

3. At all relevant times, Defendant HCA-HealthOne, L.L.C. d/b/a Presbyterian/St. Luke's Medical Center ("PSL") was a limited liability company organized under the laws of the State of Colorado, with a principal office located at 4643 S. Ulster St., Ste. 1200, Denver, Colorado, 80237.

4. At all relevant times, Defendant Ronald Gene Wagner, Jr., M.D. was a physician licensed to practice medicine in the State of Colorado.

5. All Defendants reside in the State of Colorado.

6. Jurisdiction is proper in this Court under 28 USC §1332, by reason of the diversity of citizenships of the Parties, and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

### III. GENERAL ALLEGATIONS

7. Plaintiff incorporates paragraphs 1 through 6 of this Complaint as if fully set forth herein.

8. I.J. was born on December 2, 2009 at Defendant PSL.

9. On that date, I.J. was evaluated by Roderick Lamond, M.D., a neurosurgeon.

10. Dr. Lamond's evaluation on that date revealed that I.J. had a "robust, strong cry," "satisfactory" Apgars, and "good tone in the upper extremity with appropriate newborn reflexes."

11. Dr. Lamond diagnosed I.J. with a lumbar myelomeningocele.

12. In general, a myelomeningocele is a birth defect in which the back bone and the spinal canal do not close before birth.

13. Dr. Lamond performed a surgery on December 2, 2009 in an effort to repair the myelomeningocele.

14. On December 5, 2009, Dr. Lamond diagnosed I.J. with hydrocephalus.

15. In general, hydrocephalus is a build up of fluid inside the skull.

16. On or about December 5, 2009, Dr. Lamond performed surgery on I.J. for the placement of a right-sided ventriculoperitoneal shunt in an effort to treat the hydrocephalus by draining the fluid.

17. On or about December 9, 2009, Dr. Lamond determined that the incision over the ventriculoperitoneal shunt was breaking down, and he determined that a revision was necessary.

18. Dr. Lamond performed a revision in which he replaced the right-sided ventriculoperitoneal shunt with a left-sided ventriculoperitoneal shunt.

19. I.J. was discharged home from Defendant PSL on December 16, 2009.

20. At home, I.J. was doing well, including that she was breast feeding well, urinating and stooling appropriately, was sleeping well, and was quite active and vigorous.

21. On or about January 1, 2010, I.J. was brought back to Defendant PSL.

22. It was determined that I.J. needed another ventriculoperitoneal shunt revision.

23. Dr. Lamond performed a ventriculoperitoneal shunt revision surgery on January 1, 2010.

24. Upon information and belief, the anesthesia provider during the January 1, 2010 shunt revision surgery was Defendant Wagner.

25. Upon information and belief, there were other medical personnel involved in the January 1, 2010 shunt revision surgery, including medical professionals, medical care providers, nurses, and aids.

26. The antibiotic used during the January 1, 2010 shunt revision surgery was vancomycin.

27. During the January 1, 2010 shunt revision surgery, I.J. received 255 mg of vancomycin.

28. During the January 1, 2010 shunt revision surgery, I.J. was overdosed on vancomycin.

29. This overdose was negligent.

30. I.J. was discharged home on January 8, 2010.

31. Defendants were negligent and failed to take reasonable actions during the January 1, 2010 shunt revision surgery.

32. As a direct and proximate result of Defendants' negligence, I.J. has permanent, severe, disabling, and crippling neurologic, brain, and physical injuries.

### IV. FIRST CLAIM FOR RELIEF
(Ronald Gene Wagner, Jr., M.D. – *Negligence*)

33. Plaintiff incorporates paragraphs 1 through 32 of this Complaint as if fully set forth herein.

34. On or about January 1, 2010, I.J. came under the care and treatment of Defendant Wagner

35. While under the care and treatment of Defendant Wagner, I.J. suffered severe and permanent injuries.

36. Defendant Wagner owed a duty to exercise that degree of care, skill, caution, diligence, and foresight exercised by and expected of physicians in similar situations. Defendant Wagner deviated from the pertinent standard of care and was negligent by, including, but not limited to, the following:

   a. Failing to properly supervise and monitor the condition of I.J.;

   b. Failing to appropriately administer antibiotics to I.J.;

   c. Failing to timely or properly diagnose I.J.'s condition;

   d. Failing to properly dose the antibiotics administered to I.J.;

   e. Failing to properly dose the vancomycin administered to I.J.;

   f. Failing to properly administer vancomycin to I.J.;

   g. Overdosing I.J. with vancomycin; and

   h. Failing to provide reasonable care.

37. As a direct and proximate result of the negligence of Defendant Wagner, I.J. has suffered significant and permanent brain injury and dysfunction, physical impairment and disfigurement, loss of speech, emotional distress, mental anguish, and physical suffering. I.J.'s injuries have been and will continue to be disabling, incapacitating, and humiliating. I.J.'s injuries are permanent. I.J. will be forced to spend monies in the future for medicines, prescriptions, hospital care, x-rays, doctors' fees, surgical procedures, rehabilitation, physical therapy, other types of therapy, educational costs, and long-term care and assistance. I.J. has suffered a loss of earning capacity for the future. I.J. has suffered and will suffer the loss of the ability to enjoy a normal life. I.J. has suffered economic losses, including, but not limited to, medical expenses for pharmaceuticals, physicians, hospitalizations, imaging, x-rays, doctors' fees, surgical procedures, physical therapy, other therapies, rehabilitation, educational costs, and related medical care and treatment, as well as long-term care and assistance.

38. As a direct and proximate result of the negligence of Defendant Wagner, I.J. has suffered past and future economic losses, past and future non-economic losses, past and future disfigurement damages, and past and future physical impairment damages. These losses include, but are not limited to expenses for physicians, hospitalizations, rehabilitation and related medical care and treatment. Mr. Jackson has been and will be forced to spend monies in the future for medicines, hospital care, doctors' fees, medical procedures, other related medical and rehabilitation costs for his child, I.J.

## V. SECOND CLAIM FOR RELIEF
(HCA-HealthOne, L.L.C. d/b/a Presbyterian/St. Luke's Medical Center - *Respondeat Superior*)

39. Plaintiff incorporates paragraphs 1 through 38 of this Complaint as if fully set forth herein.

40. On or about January 1, 2010, I.J. was admitted to Defendant PSL.

41. I.J. remained at Defendant PSL until approximately January 8, 2010.

42. Upon information and belief and at all relevant times, medical professionals, medical care providers, nurses, and aids were employees, agents, officers, and/or servants of Defendant PSL, and were acting within the course and scope of their employment, office, or authority.

43. Defendant PSL is responsible for the negligent acts and/or omissions of its employees, agents, officers, and/or servants.

44. Defendant PSL, acting through its employees, agents, officers, and/or servants, who were acting within the course and scope of their employment or within their authority, were negligent in their care and treatment of I.J. by, including, but not limited to, the following:

   a. Failing to properly supervise and monitor the condition of I.J.;

   b. Failing to timely treat I.J.'s condition;

   c. Failing to appropriately administer antibiotics to I.J.;

   d. Failing to timely or properly diagnose I.J.'s condition;

   e. Failing to properly dose the antibiotics administered to I.J.;

   f. Failing to properly dose the vancomycin administered to I.J.;

   g. Failing to properly administer vancomycin to I.J.;

      h. Overdosing I.J. with vancomycin; and

      i. Failing to provide reasonable care.

45. As a direct and proximate result of the negligence of Defendant PSL, acting through its employees, agents, officers, and/or servants, who were acting within the course and scope of their employment or within their authority, Plaintiff has suffered injuries and damages as more fully described above.

## VI.   THIRD CLAIM FOR RELIEF
### (HCA-HealthOne, L.L.C. d/b/a Presbyterian/St. Luke's Medical Center – *Corporate Negligence*)

46. Plaintiff incorporates paragraphs 1 through 45 of this Complaint as if fully set forth herein.

47. With respect to all matters relating to the care and treatment of I.J., Defendant PSL owed I.J. a duty to exercise that degree of care, skill, caution, diligence, and foresight expected of health care facilities providing care and treatment to patients in similar situations.

48. With respect to the care and treatment of I.J., Defendant PSL deviated from the standard of care and was negligent by, including, but not limited to, the following:

      a. Failing to properly implement appropriate and necessary hospital policies and procedures, including those related to the dosage and administration of medications, and to properly educate the staff, including medical professionals, medical care providers, nurses, and aids, on such policies and procedures;

    b. Failing to properly distribute, circulate, and/or enforce appropriate policies and procedures to both the nursing staff and medical staff, and to properly educate the staff concerning such policies and procedures;

    c. Failing to properly implement, circulate, and/or enforce appropriate policies and procedures concerning the administration of antibiotics, including vancomycin, and to properly educate the staff, including medical professionals, medical care providers, nurses, and aids, concerning such policies and procedures;

    d. Failing to properly implement, distribute, and/or enforce policies and procedures concerning the administration of vancomycin; and

    e. Failing to establish and maintain an effective system, policy, and/or procedure that would allow the medical staff, including medical professionals, medical care providers, nurses, and aids to appropriately go up the chain of command.

49. As a direct and proximate result of the negligence of Defendant PSL, Plaintiff has suffered injuries and damages as more fully described above.

WHEREFORE, Plaintiff respectfully prays for an award of compensatory damages in favor of the Plaintiff and against all Defendants in an amount to be determined by the trier of fact, all prejudgment interest allowed by law, all pre-filing interest allowed by law, all post judgment interest allowed by law, all interest allowed by law, expert witness fees, filing fees, deposition expenses, for all other costs and expenses as allowed under law, and for such other and further relief as this Court may deem appropriate.

**PLAINTIFF DEMANDS TRIAL TO A JURY.**

Respectfully submitted this 24th day of September, 2013.

LEVENTHAL, BROWN & PUGA, P.C.

By:     s/Sean B. Leventhal
James E. Puga, #18960
Marlo J. Greer, # 33086
Sean B. Leventhal, #42371
LEVENTHAL, BROWN & PUGA, P.C.
950 S. Cherry Street, Suite 600
Denver, Colorado 80246
Telephone: (303) 759-9945
Facsimile: (303) 759-9692
Email: jpuga@leventhal-law.com
Email: mgreer@leventhal-law.com
Email: sleventhal@leventhal-law.com
ATTORNEYS FOR PLAINTIFF

PLAINTIFF:
Harvey Jackson
4500 Triple T Court
Gilette, WY 82718